

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00056-CV

IN THE INTEREST OF A.R., A CHILD

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 14-0648

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

The Texas Department of Family and Protective Services (the Department) filed suit seeking to terminate J.M.'s parental rights to A.R., alleging that by virtue of his imprisonment on a three-year sentence, J.M. was unable to care for A.R. The trial court granted the Department's petition and terminated J.M.'s parental rights under Section 161.001(b)(1)(Q) of the Texas Family Code. J.M. filed this appeal alleging that the trial court erred in denying his motion for a continuance and that the evidence is legally and factually insufficient to support the judgment. Because we agree that the evidence is legally insufficient to support the trial court's judgment, we do not reach J.M.'s other points of error. We reverse the trial court's judgment terminating J.M.'s parental rights to A.R. and render a judgment denying the Department's petition to terminate J.M.'s parental rights.

## I. Factual and Procedural Background

Although very little testimony or evidence was presented at the final hearing to terminate J.M.'s parental rights, the Department's pleadings and status reports alleged that A.R. was the subject of an emergency removal by the Department on the day of his birth, August 24, 2014, because his mother admitted she had used methamphetamine that day. The Department also alleged that A.R. later tested positive for methamphetamine. J.M. did not object to or otherwise controvert those allegations.

Regarding the substance of the State's case against J.M., the record is devoid of meaningful evidence establishing the details of J.M.'s conviction and sentence. The Department introduced no exhibits on this subject, not even a judgment of conviction or order of revocation. The

2

Department's caseworker, Tara Allen, testified that J.M. had been convicted of driving while intoxicated (DWI), third or more, and that he was incarcerated at that time as a result. Allen further testified that J.M. received a three-year sentence and that his expected release date is October 15, 2016. Finally, Allen testified that J.M. was sentenced on April 26, 2014, and that the Department filed its case against J.M. in August 2014.

J.M.'s mother, A.M., testified that she agreed with Allen's testimony, but clarified, "[A]ctually, he had his parole revoked -- I mean he was sentenced actually in 2002 and so it was a parole revocation." When asked if it could have been a community supervision revocation, A.M. testified that she did not know the difference between a parole and a community supervision revocation. But she testified that J.M.'s sentence was assessed in April 2014 and that he was convicted of DWI. Allen's and A.M.'s testimony summarized herein constitutes the entirety of the evidence presented regarding J.M.'s conviction and sentence. Upon completion of the testimony, the trial court ruled as follows:

> [The] Court will find that [J.M.] by clear and convincing evidence knowingly engaged in criminal conduct that resulted in the father's conviction of an offense and confinement or imprisonment and an inability to care for the child for not less than two years from the date of filing [of the] petition pursuant to Section [161.001(b)(1)(Q)] of the Family Code. The Court finds it is in the best interest of the child that the parental rights of [J.M.] be terminated.
> That will be the order of the Court today.

J.M. timely filed his appeal of the trial court's judgment.

## II.     Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). "Because the termination of

3

parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014); *see also Santosky v. Kramer*, 455 U.S. 745 (1982). An appellate court is therefore "required to engage in an exacting review of the entire record to determine if the evidence is factually sufficient to support the termination of parental rights. *A.B.*, 437 S.W.3d at 500. "'[I]nvoluntary termination statutes are strictly construed in favor of the parent.'" *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *In re L.E.S.*, No. 06-15-00015-CV, 2015 WL 4914743, at *1 (Tex. App.—Texarkana Aug. 18, 2015, no pet. h.) (citing TEX. FAM. CODE ANN. § 161.001 (West 2014)); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007 (West 2014)) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)).

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *L.E.S.*, 2015 WL 4914743, *2 (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded

evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *J.P.B.*, 180 S.W.3d at 573).

### III. Analysis

In his second point of error, J.M. argues that the evidence is legally insufficient to support the trial court's decision to terminate his parental rights. J.M. contends that the Department failed to present clear and convincing evidence that he knowingly engaged in criminal conduct that resulted in his confinement and inability to care for A.R. for not less than two years from the date the Department filed its petition. Section 161.001(b)(1)(Q) of the Texas Family Code provides that a parent's rights may be terminated when the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(b)(1)(Q). Focusing on a parent's future confinement and inability to care for the child, subsection (Q) is to be read prospectively because it is meant to protect children whose parent or parents will be incarcerated for a period exceeding two years following the beginning of the termination proceedings. *In re A.V.*, 113 S.W.3d 355, 360–61 (Tex. 2003). "Thus, if the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection (Q) to ensure that the child will not be neglected." *Id.* at 360.

Yet, in order to satisfy the elements of subsection (Q), the Department must present evidence that J.M. knowingly engaged in the conduct that resulted in his conviction. *In re C.D.E.*, 391 S.W.3d 287, 298 (Tex. App.—Fort Worth 2012, no pet.). In *C.D.E.*, the court of appeals held

5

that because DWI is a strict-liability offense for which proof of mental culpability is not required, then the father's "mere conviction for the strict-liability offense of intoxication manslaughter cannot automatically supply the knowing element required by subsection (Q)." *Id.* at 299. Both intoxication manslaughter and DWI, third or more, are found in Chapter 49 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 49.08 (West 2011), § 49.09 (West Supp. 2015). Section 49.11(a) of the Penal Code provides, "[P]roof of a culpable mental state is not required for conviction of an offense under this chapter." *See* TEX. PENAL CODE ANN. § 49.11(a) (West 2011). Thus, the holding in *C.D.E.* is applicable here, and the Department could not establish that J.M. knowingly engaged in the conduct that resulted in his conviction of the offense of DWI, third or more, by merely introducing evidence of the conviction. *See C.D.E.*, 391 S.W.3d at 299. Instead, the Department was required to present proof of the facts surrounding the conviction to show that the father knowingly engaged in the conduct resulting in that conviction.

In *C.D.E.*, the court of appeals noted that the evidence was insufficient to prove that the father in that case acted knowingly in committing the offense of intoxication manslaughter as required by subsection (Q). The Fort Worth Court of Appeals stated:

> Father testified that, prior to the date of the car accident forming the basis of the intoxication manslaughter charges against him, he did not drink hard liquor and did not drink on a regular basis. Father said that on the day of the accident, he consumed a full bottle of Seagrams 7. Father testified that he was not intoxicated at the time of the accident and that his conduct was accidental; "[i]t was not premeditated[,] and it wasn't foreseen." This is the only evidence in the record bearing on the issue of whether Father "knowingly engaged in criminal conduct" as required to support a termination finding under section 161.002(b)(1)(Q).

6

*Id.* at 300 (alterations in original).[1] The court of appeals implied that, at best, the evidence only established that the father's conviction resulted from negligence. *Id.* at 301 ("[T]he record contains no evidence from which the trial court could have formed a firm conviction or belief that Father 'knowingly [as opposed to negligently] engaged in criminal conduct . . . .'") (alteration in original) (quoting TEX. FAM. CODE ANN. § 161.001(b)(1)(Q)).

The record in this case contains even less evidence than that in *C.D.E.* Here, the record merely discloses that J.M. was sentenced to three years' imprisonment in April 2014 for a conviction of DWI, third or more. The Department called only one witness, its caseworker Allen, who summarized J.M.'s sentence, his release date, and his parole history based on information she observed on the Texas Department of Criminal Justice website. J.M. called his mother, but her testimony interjected confusion over whether the sentence resulted from a community supervision or parole revocation. The Department introduced no offense reports, officer testimony, dashboard camera recordings, witness testimony, or other evidence of any kind concerning the facts

---

[1]The court of appeals also identified what the Department failed to prove, stating:

> No evidence exists concerning the size of the bottle of Seagrams 7 that Father drank—an airplane mini bottle or a one gallon bottle. No evidence exists regarding the period of time over which Father consumed the Seagrams 7 on the day of the accident or how long before the accident he consumed it. No evidence exists concerning whether Father vomited or slept after drinking the Seagrams 7 and before the accident. No evidence exists concerning the time of day or night that the accident occurred. No evidence exists as to whether Father was speeding, ran a red light, drove the wrong way on a one-way street, or committed any type of traffic offense in connection with the accident. No evidence exists of Father's driving conduct at all. No evidence exists of Father's blood-alcohol level. In short, . . . the record contains no evidence from which the trial court could have formed a firm conviction or belief that Father "*knowingly* [as opposed to negligently] engaged in criminal conduct"—the strict-liability offense of intoxication manslaughter—that resulted in his conviction.

*C.D.E.*, 391 S.W.3d at 300–01.

surrounding the offense or the conduct leading to J.M.'s charge and conviction. Assuming, as we must, that the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted, there is no evidence in the record upon which the trial court could reasonably conclude that J.M. knowingly engaged in the conduct resulting in his conviction of DWI, third or more, as is required by subsection (Q). Consequently, the evidence is legally insufficient to support the trial court's finding that termination of J.M.'s parental rights was justified under subsection (Q).

## IV.    Conclusion

In its petition for removal, the Department alleged all of the subsections of Section 161.001(b)(1) as grounds for terminating J.M.'s parental rights. But at the final hearing, the Department informed the trial court, "On the father, we are only proceeding on Subsection (Q)." Because the Department only asserted Section 161.001(b)(1)(Q) as a basis for terminating J.M.'s parental rights and because the evidence is legally insufficient to support termination on that basis, the evidence is legally insufficient to support the trial court's judgment terminating J.M.'s parental rights to A.R.

Accordingly, we sustain J.M.'s second point of error, and as a result, do not reach J.M.'s first point of error. We reverse the trial court's judgment terminating J.M.'s parental rights to A.R. and render a judgment denying the Department's petition to terminate J.M.'s parental rights to A.R.

Ralph K. Burgess
Justice

Date Submitted:     October 19, 2015
Date Decided        November 9, 2015